# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

DIANA MCLAUGHLIN, M.D. PA,

      Plaintiff,

v.                                                          Case No. 8:25-cv-2797-TPB-CPT

SUNSHINE STATE HEALTH PLAN, INC.,
and DWANNA G HILL,

      Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION

This matter is before the Court on Defendants "Sunshine State Health Plan, Inc. and Dwanna G. Hill's Motion to Compel Arbitration and to Stay Proceedings," filed on November 3, 2025. (Doc. 15). On November 12, 2025, Plaintiff Diana McLaughlin, M.D. PA filed a response in opposition. (Doc. 17). Upon review of the motion, response, case file, and record, the Court finds as follows:

## Background

The 99-page, 464 paragraph verified complaint is unnecessarily long and somewhat confusing. In sum, Plaintiff alleges it is a professional association providing pediatric services in Collier County, Florida. Plaintiff alleges that Defendants Sunshine State Health Plan, Inc., and Dwanna G. Hill (identified as a "senior provider engagement manager") illegally terminated Dr. McLaughlin's practice as a participating provider and unlawfully withheld payments for medical

services.  Plaintiff claims that Defendants terminated the provider agreement because Plaintiff did not administer COVID-SARS vaccines to minors and failed to therefore meet COVID-SARS vaccine rate benchmarks.  According to Plaintiff, Defendants conducted a "sham hearing," which Plaintiff apparently lost, without any opportunity to appeal.  Plaintiff asserts that a termination date was set as October 26, 2025, but Sunshine Health had already reassigned more than 300 of Plaintiff's established patients to other providers as of October 4, 2025.

On October 12, 2025, Plaintiff filed the instant lawsuit, bringing claims for violation of 42 C.F.R. § 422.202(d) (Count I), "violation of common law right to a fair process" (Count II), unjust enrichment (Count III), civil fraud (Count IV), violation of § 641.3903, *F.S.* (Count V), breach of contract (Count VI), infringement of substantive property right without due process under § 1983 (Count VII), and violation of freedom of speech under the Florida Constitution (Count VIII).

Defendants have moved to compel arbitration pursuant to an agreement between the parties.

## Legal Standard

The United States Supreme Court has explained that arbitration provisions are "a species" of forum selection clauses.  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 698 (2007) (Ginsburg, J., dissenting) (internal citations omitted); *see also VI MedRx, LLC v. Hurley Consulting Assocs., Ltd.*, No. 3:11-cv-1034-J-37TEM, 2012 WL 10494, at *2 (M.D. Fla. Jan. 3, 2012).  The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, "embodies a liberal federal policy

favoring arbitration agreements." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005).  In fact, the Eleventh Circuit Court of Appeals has "recognized that the FAA creates a presumption of arbitrability such that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (internal quotations omitted).  "Under the FAA, a party seeking to compel arbitration must demonstrate that (a) the plaintiff entered into a written arbitration agreement that is enforceable under ordinary state-law contract principles and (b) the claims before the court fall within the scope of that agreement." *Garcia v. Church of Scientology Flag Serv. Org., Inc.*, No. 8:13-cv-220-T-27TBM, 2015 WL 10844160, at *3 (M.D. Fla. Mar. 13, 2015) (internal quotations omitted)).

## Analysis

Defendants argue that Plaintiff entered into a valid arbitration agreement by agreeing to the terms of the provider agreement.  In this case, Defendants have presented evidence of a presumptively valid arbitration agreement, which broadly covers all claims and disputes related to the provider agreement.  *See* (Doc. 1-2, Provider Agreement Secs. 8.1; 8.2; 8.3).

Plaintiff does not contest the authenticity of the arbitration agreement.  Rather, Plaintiff argues (1) the provider agreement waives arbitration when either party seeks an injunction or equitable relief; (2) Plaintiff's claims are based on post-termination conduct, and because there is no valid or enforceable written agreement

between the parties as of the termination on September 15, 2025, arbitration is unenforceable; and (3) Defendants' violations of federal and state law are unconscionable, and enforcing the arbitration clause would violate public policy.

### Injunctive and Equitable Relief

Plaintiff first argues that the provider agreement waives arbitration if a party seeks an injunction or equitable relief. Section 9.3 of the provider agreement states that "[n]otwithstanding anything in this agreement, either party may bring court proceedings to seek an injunction or other equitable relief to enforce any right, duty, or obligation" under the agreement. *See* (Doc. 1-2, Provider Agreement Sec. 9.3). Plaintiff reads this clause broadly to mean that *any* claims for injunctive or equitable relief prevent either an entire case – or at minimum, equitable claims – from being arbitrated. That simply cannot be true, and a party cannot transform arbitrable claims into nonarbitrable ones simply by requesting equitable relief as a strategic move to defeat an arbitration requirement.

Many courts have concluded that equitable carveouts to arbitration clauses should only be enforced to carve out temporary and emergent equitable relief. *See Davis v. SEVA Beauty, LLC*, No. C17-547 TSZ, 2017 WL 11921334, at *3-4 (W.D. Wash. Sept. 13, 2017) (explaining that plaintiffs could not circumvent arbitration clause by seeking equitable remedies for claims within the scope of arbitration); *Info. Sys. Audit & Control Ass'n, Inc. v. TeleCommunication Sys., Inc.*, No. 17 C 2066, 2017 WL 2720433, at *4-5 (N.D. Ill. June 23, 2017) (interpreting facially broad carveout  for equitable claims to only exclude from arbitration claims for

temporary equitable relief); *Baldwin Tech. Co. v. Printers' Serv., Inc.*, No. 15 Civ. 07152 (GBD), 2016 WL 354914, at *3 n.4 (S.D.N.Y. Jan. 27, 2016) ("[W]here a contract has both a broad arbitration clause and a clause permitting the parties to seek injunctive relief before a court, courts in this District have construed the latter clauses as permitting the parties to seek injunctive relief ... in aid of arbitration, rather than … transforming arbitrable claims into nonarbitrable ones depending on the form of relief prayed." (internal quotation omitted)); *DXP Enters, Inc. v. Goulds Pumps, Inc.*, No. H-14-1112, 2014 WL 5682465, at *7-8 (S.D. Tex. Nov. 4, 2014) (concluding that claims for permanent injunctive and declaratory relief must be submitted to arbitration despite carveout language that allowed parties to seek injunctive relief with courts); *WMT Inv'rs, LLC v. Visionwall Corp.*, No. 09 Civ. 10509(RMB), 2010 WL 2720607, at *4 (S.D.N.Y. June 28, 2010) (enforcing arbitration despite carveout for equitable relief because, in part, "if there is a reading of the various agreements that permits the arbitration clause to govern, the Court will choose it.").

In this case, the arbitration provision itself does not exclude claims for injunctive or equitable relief – it is broad and encompasses *all* claims and disputes arising under the provider agreement, regardless of the requested relief.  As such, the Court interprets the carveout provision to provide the parties with an opportunity to seek only emergency or time-sensitive equitable relief with a court. Thus, Plaintiff had the right to seek injunctive relief through its requests for a temporary restraining order and a preliminary injunction, which the Court

entertained. Plaintiff does not have, however, the right to maintain this entire suit in federal court. In light of the language of the arbitration provision, the case law, and the public policy favoring arbitration, the Court concludes that the injunction and equitable relief carveout does not preclude arbitration of Plaintiff's claims.

### *Post-Termination Conduct*

Plaintiff's claims arise from what it contends is an unlawful termination of the provider agreement. Even if acts occurred after September 15, 2025, the contract between the parties clearly articulates that any claims or disputes arising under the provider agreement are subject to arbitration. Plaintiff's claims pertaining to the allegedly unlawful termination of the provider agreement are clearly claims or disputes arising under the provider agreement, regardless of timing. This argument does not bar arbitration of Plaintiff's claims.

### *Unconscionability and Public Policy*

Plaintiff claims that enforcing the arbitration agreement in this case would be unconscionable and against public policy because "this case is about parties with extreme disparities of economic and political power" and "concerns violations of fundamental constitutional rights, federal and state statues[,] and allegations of fraud and other torts."

<u>Public Policy</u>

First, considering whether the arbitration provision is void against public policy the Court weighs whether Plaintiff has an adequate forum to pursue remedies. Although arbitration may provide a less favorable forum, it does not

deprive Plaintiff of a remedy. *See Lebedinsky v. MSC Cruises, S.A.*, 789 F. App'x 196, 202-03 (11th Cir. 2019); *see also Smith v. Mt. Hawley Ins. Co.*, No: 8:22-cv-1386-CEH-TGW, 2022 WL 16856418, at *5 (M.D. Fla. Nov. 10, 2022) (quoting *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1297 (11th Cir. 1998)). The Court therefore concludes that the arbitration agreement at issue in this case is not void against public policy.

Unconscionability

Plaintiff also argues that the arbitration agreement is unconscionable. "[T]o invalidate an arbitration clause, a party must establish both procedural and substantive unconscionability." *Garcia*, 2015 WL 10844160, at *5. "Procedural unconscionability 'relates to the manner in which the contract was entered,' and substantive unconscionability asks whether the terms of the agreement are themselves too unfair to enforce." *Garcia*, 2021 WL 5074465, at *6.

A district court considers whether an arbitration clause is unconscionable under governing state law. *See Dale v. Comcast Corp.*, 498 F.3d 1216, 1119 (11th Cir. 2007) (explaining that FAA allows state law to invalidate an arbitration agreement, and therefore defense such as unconscionability may be applied to invalidate an arbitration agreement); *Paladino v. Avnet Computer Technologies, Inc.,* 134 F.3d 1054, 1061 (11th Cir. 1998) (arbitration clause is interpreted according to ordinary state-law rules of contract construction). When evaluating whether an agreement is unconscionable, Florida employs a balancing, or "sliding

scale," approach. *See, e.g.*, *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1159 (Fla. 2014).

"[B]oth the procedural and substantive aspects of unconscionability must be present, although not necessarily to the same degree, and both should be evaluated interdependently rather than as independent elements." *Id.* at 1161. Ultimately, the question is whether an agreement is imposed so unfairly that it should not be enforced. *See id.* at 1157 (Unconscionability is used "to prevent the enforcement of contractual provisions that are overreached by one party to gain 'an unjust and undeserved advantage which it would be inequitable to permit him to enforce.'"). The burden of proving unconscionability rests upon the party asserting unconscionability. *See SA-PG Sun City Center, LLC v. Kennedy*, 79 So.3d 916, 919 (Fla. 2d DCA 2012).

"The central question with respect to the procedural component of unconscionability 'is whether the complaining party lacked a meaningful choice when entering into the contract.'" *Garcia*, 2015 WL 10844160, at *5 (quoting *Basulto*, 141 So. 3d at 1157 n.3). The important question is whether the circumstances created such oppression or surprise that closer scrutiny of the fairness of the agreement is required. Unequal bargaining power on its own is *not* enough to render an arbitration agreement unenforceable. *Caley v. Gulfstream Aerospace Corp*, 428 F.3d 1359, 1377 (11th Cir. 2005) (quoting *Gilmer v. Interstate/Johnson Lan Corp.*, 500 U.S. 20, 32-33 (1991)).

A failure to comprehend or negotiate arbitration, or unequal bargaining power, does not negate the enforceability of the arbitration agreement in this case. In addition, considering factors related to oppression, the Court finds that Plaintiff has failed to put forth any argument or evidence to demonstrate unfair oppression related to the arbitration provision. Factors relevant to establishing oppression include, but are not limited to, "(1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney." *See Farnham v. Grindr, LLC*, 8:25-cv-1260-TPB-AEP, 2025 WL 3062698, at *5 n.3 (M.D. Fla. Nov. 3, 2025) (quotation omitted). The Court notes that Plaintiff Diana McLaughlin, M.D. PA is a professional association represented by Dr. Diana McLaughlin, who herself has a medical degree, a juris doctorate degree, and a master of business administration degree. Plaintiff has failed to provide any information as to the first two factors, and it is Plaintiff's burden to establish oppression. Moreover, in light of Dr. McLaughlin's education, credentials, and experience, the third, fourth, and fifth factors would weigh heavily against a finding of oppression in these circumstances. Consequently, Plaintiff has failed to establish procedural unconscionability.

Even if the Court were to find the arbitration agreement was procedurally unconscionable to some degree, Plaintiff has not demonstrated that the agreement

is substantively unconscionable.  Substantive unconscionability requires a determination of whether the terms are "unreasonably favorable" to one party over the other.  *Garcia*, 2015 WL 10844160, at \*5.  In making the determination, a court should "ask[] whether the more powerful party overreached and 'gained an unjust and undeserved advantage which it would be inequitable to permit him to enforce." *Id.* (quoting *Steinhardt v. Rudolph*, 422 So.2d 884, 889 (Fla. 3d DCA 1982)).

The agreement in this case is a bilateral agreement to arbitrate disputes, and it does not appear to include one-sided terms.  Plaintiff's bare allegation that Defendants want to conceal the issues in this case from public scrutiny is unsupported and unavailing.  And as for Plaintiff's argument that it wants a jury trial, the Court notes that "the loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate."  *See Caley v. Gulfstream Aerospace Corp*, 428 F.3d 1359, 1371 (11th Cir. 2005) (internal quotation and citation omitted).  As such, Plaintiff's unconscionability arguments do not provide a basis to invalidate the arbitration agreement at issue here.

## Conclusion

For the reasons discussed above, the arbitration agreement in this case is enforceable.  In accordance with Eleventh Circuit precedent, this case is stayed. *See, e.g., Milestone v. Citrus Specialty Grp., Inc.*, No. 8:19-cv-2341-T-02JSS, 2019 WL 5887179, at \*3 (M.D. Fla. Nov. 12, 2019) (citing *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992); 9 U.S.C. § 3; *Giraud v. Woof Gang*

*Bakery*, No. 8:17-cv-2442-T-26AEP, 2018 WL 2057814 (M.D. Fla. May 3, 2018)).

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) "Sunshine State Health Plan, Inc. and Dwanna G. Hill's Motion to Compel
    Arbitration and to Stay Proceedings" (Doc. 15) is **GRANTED**.

(2) This case is **STAYED** pending the completion of arbitration, and the parties
    are directed to notify the Court within 14 days of the resolution of the
    arbitration proceedings.

(3) The Clerk is directed to terminate all pending motions and deadlines, and
    thereafter close this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>19th</u> day of
November, 2025.

TOM BARBER
UNITED STATES DISTRICT JUDGE